IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2004

## MARQUEZ WINTERS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27271      Arthur T. Bennett, Judge**

_____

**No. W2004-00058-CCA-R3-PC  - Filed February 18, 2005**

_____

The petitioner, Marquez Winters, was found guilty by a jury in the Shelby County Criminal Court of attempted first degree murder and aggravated kidnapping.  He received a total effective sentence of thirty-seven years incarceration in the Tennessee Department of Correction.  Subsequently, the petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of trial and appellate counsel.  The post-conviction court denied the petition, and the petitioner now appeals that ruling.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Marquez Winters.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On December 8, 2000, the petitioner was convicted of attempted first degree murder and aggravated kidnapping.  The facts underlying the petitioner's convictions are as follows:

> On the evening of May 18, 1997, Vernon Earnest, his sister, and Sherman Bennett were driving down Elvis Presley Boulevard, near Rose Hill Cemetery in Memphis, and noticed a naked and severely injured woman on the side of the road.  When they stopped

to help, the woman told them that "Low-down" and someone named Nicki or Nick had injured her.

Investigators later questioned the victim, Natalie Bolton, about the incident. The victim reported that she was a member of the Gangsters Disciples and that other gang members had forced their way into her apartment and assaulted her. The victim testified that three black females kicked her door in and dragged her from her home. As she resisted, they tore off her clothes and hit her on the head with a bottle. Two black males, one of whom the victim identified as the [petitioner], were also present. Eyewitnesses at the apartment complex confirmed the victim's account of the abduction.

The victim testified that she was then placed in the back of a truck, blindfolded with a bandana, and driven to an unknown location. When the victim and her abductors arrived at the location, the victim was seated in a chair in the middle of a group of people. During this time, the victim was able to identify the voices of several of her abductors. The victim recognized the [petitioner] by his distinctively "squeaky" voice, which was the result of a gunshot wound to his throat. The victim also recognized the voice of the [petitioner's] girlfriend, Nadia. The victim testified that the [petitioner] tried to force her to drink a glass of bleach and ammonia, and when she refused, he poured the glass over her head and hit her in the face with the empty glass, knocking out a tooth. The victim testified that she and her abductors remained at this location for about one hour, and during that time, the [petitioner] continued to talk to her and to assault her.

The victim was then forced into the trunk of a car and driven to Rose Hill Cemetery. Her blindfold was secured, and another bandana was placed over her mouth. After arriving at the cemetery, the victim was forced to a secluded spot, where she listened to the [petitioner] and his girlfriend argue about who was going to shoot the victim first. The victim was then shot several times. The shots were not fired in succession; rather, the [petitioner] and his girlfriend talked to each other between shots. The victim testified that she did not know who fired the first shot, but she was certain that the [petitioner] fired the last shot because her blindfold had slipped down around her neck. After "playing dead" for about fifteen minutes, the victim crawled to the road and was discovered by passers by.

A records clerk at the Regional Medical Center in Memphis testified that the victim was admitted on May 18, 1997 with six gunshot wounds in her chest, abdomen, and pelvis. The victim had also sustained facial and nasal fractures, loose teeth, bladder injuries, and bowel injuries.

While the victim was in the hospital, she identified the [petitioner] as one of her attackers. Investigators testified that they were initially unable to locate the [petitioner] for questioning. Eventually, the [petitioner] went to the police station and offered information about what he called "the Natalie Bolton murder." One officer testified that the [petitioner] told police he had heard about the incident through female members of the Gangster Disciples, but also stated that he had heard gunshots and had seen the shooter. Once the [petitioner] stated that he had been present at the crime scene, the officer informed him that the victim had not in fact died and that she had identified the [petitioner] as one of her attackers. At that point, the [petitioner] refused to further discuss the incident.

State v. Marquez Winters, No. W2001-00740-CCA-R3-CD, 2002 WL 31322542, at **1-2 (Tenn. Crim. App. at Jackson, Oct. 15, 2002). On direct appeal, the petitioner challenged the sentences imposed upon him. This court affirmed the petitioner's sentences. Id.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel and his appellate counsel were ineffective. At the post-conviction hearing, the petitioner testified that he met with trial counsel prior to trial approximately four times for brief periods of time. The petitioner could not recall discussing trial strategy with trial counsel, but he did recall discussing his right to testify at trial. The petitioner asserted that he was aware that he had a right to testify; however, he qualified his assertion, maintaining that he believed the ultimate decision regarding whether he should testify was made by counsel. Regardless, the petitioner admitted that he knew that he could have testified at trial despite counsel's advice.

Additionally, the petitioner complained that trial counsel should have objected to the testimony of the State's witnesses, Sherman Ray Bennett, Vernon Earnest, and Officer Ricky Davidson. Specifically, the petitioner argued that trial counsel should have objected when the witnesses testified that, upon discovery of the victim who had just been shot, the victim identified the petitioner as her assailant. The petitioner claimed that the statements were hearsay and were therefore objectionable. Further, the petitioner complained that on cross-examination counsel asked the witnesses questions regarding the hearsay statements, compounding the error.

Finally, the petitioner contended that his appellate counsel was ineffective for raising only the issue of his sentences on appeal. The petitioner stated that he believed appellate counsel intended to appeal his convictions and his sentences. The petitioner maintained, "I feel like she should have

appealed the whole case."  The petitioner further stated that after his sentences were affirmed on direct appeal, his counsel filed a Rule 14 application for permission to withdraw instead of filing a Rule 11 application for permission to appeal to the supreme court.[1]  Regardless, the petitioner testified that he filed a pro se application for permission to appeal, which application was denied by the supreme court.

At the post-conviction hearing, the petitioner's trial counsel testified that prior to trial he met with the petitioner several times for periods ranging from thirty minutes to two hours.  Trial counsel stated that he did not object to the "hearsay" statements of Bennett, Earnest, and Davidson because he believed such statements were admissible under the excited utterance exception to the hearsay rule.  Additionally, trial counsel maintained that he asked the witnesses about the hearsay statement on cross-examination for "clarification."

Trial counsel asserted that he reviewed with the petitioner his right to testify at trial.  Counsel advised the petitioner that testifying would not be in his best interest.  The petitioner seemed to understand his right to testify, and he never indicated to trial counsel that he wished to testify.  Trial counsel conceded that he was unfamiliar with Momon v. State, 18 S.W.3d 152 (Tenn. 1999), which case outlines a procedure for affirmatively placing in the record a defendant's waiver of the right to testify.  Regardless, trial counsel believed that the voir dire he conducted of the petitioner at trial demonstrated that the petitioner knowingly and voluntarily waived his right to testify.  Finally, trial counsel maintained that he raised several issues in the petitioner's motion for new trial in order to preserve them for appeal.

At the post-conviction hearing, the petitioner's appellate counsel testified that she examined the petitioner's trial record to determine the issues most likely to succeed on appeal.  She reviewed the issues raised in the petitioner's motion for new trial, researched the issues, and determined that "they were in my judgment slam dunk losers."  Appellate counsel stated that the propriety of petitioner's sentences was the only issue "ripe" for appellate review.  Counsel stated that she and the petitioner exchanged letters concerning his appeal; however, "the ultimate decision as to what goes in the brief is mine, not [the petitioner's]."

Appellate counsel also testified that after this court affirmed the petitioner's sentences, she declined to file a Rule 11 application for permission to appeal to our supreme court.  Instead, appellate counsel filed for permission to withdraw pursuant to Rule 14.  Additionally, counsel informed the petitioner that she was withdrawing from representation, but the petitioner had the right to file a pro se application for permission to appeal.

At the conclusion of the hearing, the post-conviction court found that neither the petitioner's trial counsel nor his appellate counsel had been ineffective.  Therefore, the petitioner was not entitled to post-conviction relief.  On appeal, the petitioner contests this ruling.

---

[1]  See Tenn. R. App. P. 11; Tenn. R. Sup. Ct. 14.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

### A. Trial Counsel

On appeal, the petitioner asserts that his trial counsel was ineffective by failing to explain the petitioner's right to testify in a manner that complied with the dictates of Momon v. State, 18 S.W.3d 152 (Tenn. 1999), and by failing to object to the hearsay testimony of Bennett, Earnest, and Davidson. In connection with the petitioner's first complaint, he specifically alleges that the limited voir dire conducted by counsel in which the petitioner waived his right to testify, did not conform

to the procedure suggested in Momon. Thus, "trial counsel was ineffective and [the petitioner] did not fully understand his fundamental right to testify and that the jury could not hold it against him if he did not testify,"

It is unquestionable that a criminal defendant has a fundamental, constitutional right to testify at trial. Id. at 161. This fundamental right may only be waived by the defendant himself. Id. "Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" Id. at 161-62. Such waiver may not be presumed by a silent record. Id. at 162.

In Momon, our supreme court outlined procedural safeguards to be employed by the trial court to ensure that a defendant's knowing, voluntary, and intelligent waiver of the right to testify would be reflected on the record. Id. However, because Momon served only to clarify the existing law, "the mere failure to follow these guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant." Id. at 163.

At the conclusion of defense proof at trial, trial counsel conducted a voir dire examination of the petitioner as follows:

> Trial counsel: Mr. Winters, I'm doing this just to make sure
> – you and I have spoken about this case, right?
>
> The petitioner: Right.
>
> Trial counsel: And I've gone over all your legal rights; is that correct?
>
> The petitioner: Right
>
> Trial counsel: And I've advised you that if you wanted to testify, you could testify; is that right?
>
> The petitioner: Right.
>
> Trial counsel: Okay. Did we come to a decision that it would be in your best interests to not testify?
>
> The petitioner: Not testify, right.
>
> Trial counsel: Okay. Did you agree with that?
>
> The petitioner: Yes, I did.

-6-

Trial counsel: Anybody making you not testify?

The petitioner: No.

After reviewing the proof, the post-conviction court found that

> the [petitioner] testified here in this court that he understood that he had a right to take the stand if he wanted to. And that he agreed with [trial counsel] that he would not take the stand. That's all that's necessary. If he understands he can take the stand or he can remain silent and not take the stand. And I got from the [petitioner's] testimony on cross examination that he understood all of that.

We agree with the post-conviction court that the record affirmatively demonstrates that the petitioner was aware of his right to testify and voluntarily waived that right. Therefore, we conclude that trial counsel was not ineffective in this regard. See Michael C. Adams v. State, No. E2003-00658-CCA-R3-PC, 2003 WL 22999409, at *7 (Tenn. Crim. App. at Knoxville, Dec. 22, 2003).

The petitioner also complains that trial counsel was ineffective in failing to object to the hearsay testimony of Bennett, Earnest, and Davidson that shortly after the victim was shot, she identified the petitioner as her assailant. Further, the petitioner claims that trial counsel was ineffective "in soliciting the same damaging hearsay testimony on cross-examination."

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). It is undisputed that the testimony by the three witnesses wherein they stated that the victim told them that the petitioner was her assailant was hearsay testimony. As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions to the rule against hearsay. See Tenn. R. Evid. 802. Trial counsel stated that he did not object to the testimony because he believed the statements were admissible as excited utterances. A statement is considered an excited utterance if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2).

In the instant case, the victim, bleeding from multiple bullet wounds that she had just received, was found by Bennett and Earnest. The victim stated that the petitioner had shot her. Officer Davidson was called to the scene where he found the victim, still battered, bloody, and naked, awaiting medical assistance. She described the offenses and identified the petitioner as the person who shot her. The post-conviction court determined that such statements qualified as excited utterances and would have been admissible at trial even if trial counsel had objected. We agree.

Further, the petitioner claims that trial counsel was ineffective for asking questions regarding the victim's excited utterance on cross-examination. Trial counsel opined that he asked questions for "clarification," indicating that the questions were asked as a matter of trial strategy. On appeal,

this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, we note that in light of the victim's damning testimony in which she positively identified the petitioner as the shooter, the petitioner suffered no prejudice as a result of the questions asked by trial counsel. This issue is without merit.

## B. Appellate Counsel

The petitioner also makes two complaints regarding the representation of appellate counsel. First, the petitioner contends that counsel should have raised additional issues on appeal instead of challenging only the propriety of his sentences. However, this court has previously observed,

> "[F]ailure to preserve and/or assert all arguable issues on appeal is not per se ineffective assistance of counsel, since the failure to do so may be a part of the counsel's strategy of defense. Counsel is not constitutionally required to argue every issue on appeal, or present issues chosen by his client. The determination of which issues to present on appeal is a matter of counsel's discretion."

State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (quoting State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)). Moreover, "[a]ppellate counsel are not constitutionally required to raise every conceivable issue on appeal." Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004).

As we have noted, in the instant case, appellate counsel testified that after reviewing the petitioner's trial record, she determined that all other issues were "slam dunk losers." She further determined that the propriety of the petitioner's sentences was the only issue "ripe" for appellate review. We can discern nothing in the record to indicate that counsel's decision to forego all issues except for the propriety of the petitioner's sentences was ineffective assistance. See Carpenter, 126 S.W.3d at 888.

Finally, the petitioner complains that after his sentence was affirmed by this court, his appellate counsel filed a Rule 14 application for permission to withdraw instead of filing a Rule 11 application for permission to appeal to the supreme court. Rule 14 of the Rules of the Supreme Court provides that counsel for an indigent party must obtain permission to withdraw from representation "not later than fourteen (14) days after the intermediate court's entry of final judgment." Tennessee Rule of Appellate Procedure 11 provides, "An appeal by permission may be taken from a final decision of the Court of Appeals or Court of Criminal Appeals to the Supreme Court only on application and in the discretion of the Supreme Court."

At the post-conviction hearing, appellate counsel testified that after this court affirmed the petitioner's sentence, she found no merit in further appealing the petitioner's case. Therefore, she filed a Rule 14 application for permission to withdraw. She notified the petitioner of her withdrawal and of his right to file a pro se application for permission to appeal. The petitioner testified that he

was aware of appellate counsel's withdrawal, and that he filed a pro se application for permission to appeal to our supreme court. Our supreme court denied the petitioner permission to appeal. We can discern no impropriety in appellate counsel's actions as she followed the procedure set forth in Rule 14. This issue is without merit.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

    _____

NORMA McGEE OGLE, JUDGE